**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 14-05023-01-CR-SW-BP |
| | ) | |
| MARK E. DREW, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO SUPPRESS EVIDENCE**
**AND REQUEST FOR A *Franks* Hearing**

Comes now Defendant, Mark E. Drew, by and through counsel, and hereby moves for the suppression of any and all evidence and/or statements arising on, or after, the November 21, 2013, search and seizure of items by law enforcement of the home of Mr. Drew located at 3030 S. Oliver Street in Joplin, Missouri. This search and seizure was made pursuant to a federal search warrant issued on November 13, 2013. This motion seeks the suppression of any evidence or statements derived directly, or indirectly, from the following items seized and searched by members of law enforcement from pursuant to this search warrant on, or after, November 21, 2013:

- An EMachine desktop computer, Model W5333, Serial Number CGM7630008155.

- A Gateway desktop computer, Model 510X, Serial Number 1099965470.

- An EMachine desktop computer, Model D4362, Serial Number GV24410000881.

- A Sandisk 4 GB Cruzer USB flash drive.

1

- Various CD or DVD disks seized from the home of Mark Drew.

- All statements allegedly made by Mark Drew on November 21, 2013, or thereafter.

Suppression of these items is mandated pursuant to the Fourth Amendment of the United States Constitution in that: (1) the author of the affidavit knowingly, or recklessly, inserted into the affidavit false or misleading statements, or omitted material information, and that without said false statements (or with the omitted information inserted), the affidavit fails to establish probable cause; (2) the affidavit authored to support the request for the aforementioned search warrant, taken in its entirety, does not establish probable cause to search the home located at 3030 S. Oliver Street in Joplin, Missouri and any alleged probable cause as to that home was fatally "stale;" and (3) The affidavit is based, in substantial part, on information derived from administrative subpoenas issued by law enforcement, and without judicial oversight, that violate the Fourth Amendment.

For these reasons, Mr. Drew requests a *Franks* hearing and a suppression hearing.

**FACTUAL BASIS FOR**
**SUPPRESSION AND A *FRANKS* HEARING**

The search and seizure to which Mr. Drew objects occurred on November 21, 2013, at his home located at 3030 Oliver Street in Joplin, Missouri. Police arrived at this location on this day bearing a federal search warrant that had been signed on November 13, 2013. In requesting the issuance of this federal search warrant, Chip Root, a "Task Force Officer (TFO) with the Federal Bureau of Investigations (FBI) Violent Crimes Against Children Task Force," authored an affidavit dated November 13, 2013, which contained

alleged facts purporting to establish probable cause to search the home located at 3030

Oliver Street in Joplin, Missouri.   This motion to suppress, and for a *Franks* hearing,

focuses on the statements, representations, and material omissions of fact of Mr. Root in

this affidavit.   For the Court's convenience, this affidavit is attached in its entirety to this

motion suppress evidence.   *See Attachment A.*

Of specific importance are ¶ 32 through ¶ 42 of the affidavit which attempt to show

probable cause that child pornography would be located at 3030 Oliver Street in Joplin,

Missouri.   Initially, ¶ 32 through ¶ 37 set forth a highly generalized background of an

ongoing international investigation that began in 2010.   It is significant to note that

nothing in ¶ 32 to ¶ 37 provides a specific or direct evidentiary basis for finding probable

cause that child pornography would be found at 3030 Oliver Street in Joplin, Missouri.

These paragraphs in the affidavit state follows:

> 32. On October 7, 2013, the Affiant initiated an investigation into a subject
> believed be living in the city of Joplin, Missouri, using the online screen
> name of "maddog8in." This user is suspected of uploading suspected child
> sexual exploitation images to a website, hereafter referred to as "Website A"
> to protect the integrity of the investigation, via the internet.

> 33. Website A is an image sharing website that is hosted outside the United
> States. It is a free website. Website A is organized by different forums
> according to topic. Examples include topics such as "architecture," "travel,"
> "family," and "autos." Each website forum contains albums posted and
> named by the registered website user that created the album.

> 34. To register an account, and become a "member" of Website A, a user
> must provide a valid email address in order to receive a password provided
> by Website A. The user must create a new username and password as a login,
> and as a member, may create albums and post images within the albums.
> Each album is listed under their username and can be made available to all
> individuals on the web or make an album password protected, that is only

accessible to individuals who know or have the password. Using a password protected album, a member may post preview pictures that may be viewed without a password, while the password-protected portion contains additional images that are only visible using the password. Individuals viewing the images are able to post comments about the images and the user can respond to the comments being posted.

35. Website A, has become popular with individuals seeking to post and/or download child sexual exploitation images, in particular through the "nudity" and "kids" forums. Examples of the names of albums law enforcement has observed with these two forums include "13 yo boy pies,'" "street boys," "Cute little brunette," "Baby and Toddler Boys," and "Maria cute chubby 16 yo (nude) (password protected)."

36. U.S. law enforcement has observed that some, but not all of Website A's albums contain child pornography, which is most often found in password protected albums. While most of the images law enforcement has seen posted in the public preview portion of these albums may not constitute child pornography, often evidence from the images, and comments posted about the album by other individuals as well as the member who created the album, indicates that the particular poster or person who created the album has a sexual interest in children and that these individual's interest in Website A lies in the ability to meet other individuals with a sexual interest in children.

37. Since November 2010, Department of Justice Child Exploitation and Obscenity Section (CEOS) High Technology Investigative Unit (HTIU) has been involved in the investigation of over two dozen Website A users who either post sexually explicit images of children to Website A or distributed sexually explicit images of children to another user to obtain their password. In over half of these cases, investigation revealed that these individuals were actively molesting children and/or posting images of that abuse of Website A.

*Attachment* A.   Only at this point does the affidavit, in ¶ 38 through ¶ 42, begin any attempt to focus the purported probable cause basis on 3030 Oliver Street in Joplin, Missouri.   Paragraph 38 states:

4

38. On July 22, 2013, Website A user "maddog8in" was identified as creating albums and posting them to Website A. The e-mail address associated with user "maddog8in" was listed as "maddog8in@yahoo.com." "maddog8in" was found to have posted three albums. The first album was named, "24 yo daughter & friend" with an album description of "please leave comments trade with other dads" and advertised 12 photos inside the album. The second album was titled, "daughter in shower and friend," with an album description of "love to trade p4p with other dads" and also advertised 12 photos inside the album. The third album was titled, "Santas Elves." This album did not have an album description but advertised five photos.   It was noted that user id "maddog8in" commented 13 times on various images examples of the comments are as follows: "Love to see more of her love to trade on yahoo." Posted on 03/24/2009 at 21:28:05 UTC. "Nice set check mine out and would love to trade pass." Posted on 01/29/2010 at 13: 13 :26 UTC. "Lily what a sexy lady what part of OK are you from in MO here would love to chat some time check out my albums." Posted on 11/29/2011 at 01:29:02 UTC. Etc.

*Attachment A*.

First and foremost, this paragraph provides no basis for suspecting any form of child pornography will be located at 3030 Oliver Street—indeed, the titles of the folders tend to support an assumption that they contained exclusively adult pornography.

Second, the contents of this paragraph are derived from a July 22, 2013, FBI document entitled, "Lead to Kansas City Division Joplin RA regarding subject Mark Drew for advertising CEM [child exploitation material]."   *Attachment B*.   This FBI report describes the history of an FBI investigation into a foreign website, labelled "Website A," which was suspected of allowing individuals to post and share child pornography.   *Id*. Neither this FBI report, nor Agent Root's affidavit, identify the specific source of any of the allegations purporting to show that persons at 3030 Oliver Street in Joplin, Missouri were involved with Website A.   At most, this FBI reports states:

5

In August 2012, the FBI obtained a digital copy of part of Website A's data, including information related to Website A's usernames, album names, album passwords, user comments, and associated e-mail address and IP logs. This information was provided to the FBI from foreign law enforcement in connection with the Innocent Images International Task Force meeting. Website A voluntarily provided this information to foreign law enforcement in connection with a foreign investigation related to a user of Website A. In April 2013, the FBI obtained an updated digital copy of Website A's data to provide information up to March 30, 2013.

*Attachment B.*   Critically omitted from this report, and the affidavit, are the identities of the persons who provided this information, the process by which said information was gathered, what if any forensic analysis was done, any history as to the reliability or veracity of these sources, and how, or by whom, this alleged conduct on Website A was attributed to persons at 3030 Oliver Avenue in Joplin, Missouri.   Agent Root's affidavit specifically fails to inform the Magistrate that the source of these alleged connections of said persons to Website A was an unknown and untested source, who used an unknown forensic procedure (assuming that any forensic analysis was done at all), or that this source had absolutely no assurance of reliability, veracity, or any history of trustworthiness personally or concerning forensic methods.

Third, ¶ 38 is the only statement in the affidavit that purports to allege <u>when</u> any suspicious conduct relevant to the above-titled case, and connected to Website A, occurred. To be clear, nothing in the entire affidavit alleges <u>when</u> any occupant of 3030 Oliver Street is alleged to have posted images on Website A appearing to be child pornography—on that fact the affidavit is completely silent.   *See Attachment A, ¶¶ 32-42.*   Indeed, ¶ 38 makes clear that the last suspicious actions of any kind allegedly connecting 3030 Oliver Avenue

6

to Website A occurred on November 29, 2011—two years prior to the search and seizure conducted by Agent Root in this case. Importantly, this last known activity is wholly unconnected with any allegations of posting, or commenting on, child pornography. Rather, this conduct was merely posting on Website A the comment "Lily what a sexy lady what part of OK are you from in MO here would love to chat some time check out my albums." Posting such a comment is neither a crime or directly attributable to anyone at 3030 Oliver Street. As previously stated, the entire affidavit is devoid of any allegation of purported fact showing <u>when</u> anyone at 3030 Oliver Street allegedly posted, accessed, or was otherwise associated with any images of suspected child pornography. *See Attachment A, ¶¶ 32-42.*

Fourth, the affidavit fails to inform the Magistrate that the forensic basis for any alleged connections between Website A and persons at 3030 Oliver in Joplin, Missouri are incomplete and have a high risk of taint, corruption, and a lack of reliability. Paragraph 38 of the affidavit states, "On July 22, 2013, Website A user 'maddog8in' was identified as creating albums and posting them to Website A. The e-mail address associated with user 'maddog8in' was listed as maddog8in@yahoo.com. 'maddog8in' was found to have posted three albums." *Attachment A.* The affidavit, however, failed to inform the Magistrate that the above critical statements in ¶ 38 were obtained from an unknown person who was allegedly connected "with a foreign investigation related to a user of Website A." *See Attachment B, page 4.* Stated differently, Agent Root omitted from the affidavit information he had obtained from the FBI that this information was unverified

7

and apparently unverifiable. Agent Root's omission from the affidavit is not minor. The risks of taint, corruption, and the existence of malware and computer viruses are real and significant when other users are associated with, and have access to, digital information and images. Here, the "connection" this unknown Website A user had with the alleged images referenced in the affidavit is unknown and/or unspecified. In his affidavit, Agent Root failed to share with the Magistrate that the forensic reliability of the affidavit's conclusion that the images allegedly connected to 3030 Oliver Street have a strong possibility of corruption and compromise due to another user having a "connection" with these images.

Similarly, the affidavit failed to inform the Magistrate that the FBI has informed Agent Root that "[a]ll other images are not available as they have been either deleted by the user that posted the image or it has been taken down by Website A administrators." *Id.* at page 6. Thus, the affidavit hid from the Magistrate's consideration the fact that the digital information discussed in ¶ 38 is incomplete, has been tampered with by an unknown person or persons, and is forensically compromised.

Paragraphs 39 and 40 state:

39. On February 12, 2013, an administrative subpoena was sent to Yahoo! regarding e-mail address, "maddog8in@yahoo.com" requesting subscriber information for this user. On February 27, 2013, Yahoo! provided the following subscriber information: Name: Mr Mad Dog, login Name: "maddog8in@grouply.com;" Alternate E-mail: "maddog8in@grouply.com." Account Created: IP address 69.55.132.66 on June 11, 2006at11:51:59 GMT. Account status: Active. Last login IP: 24.119.190.79 on February 26, 2013 at 01:45:12 GMT.

40. On March 19, 2013 an administrative subpoena was served on Cable One Inc. requesting subscriber information for IP address 24.119.190.79 from January 14, 2013 at 12:02:13 GMT to February 26, 2013 at 01:45:12 GMT. On March 25, 2013, Cable One Inc. provided the following subscriber information for the above listed IP address. Account holder: Mark Drew, Address: 3030 S. Oliver Ave., Joplin, MO 64804 with phone number 417-623-6861.

*Attachment A.* Paragraphs 39 and 40 make clear that the last internet activity of any kind allegedly associated with 3030 Oliver Street in Joplin, Missouri was on February 26, 2013, almost nine months before the execution of the federal search warrant in this case. There is absolutely no indication in the affidavit that the alleged internet activity on February 26, 2013, was linked to Mr. Drew or had any connection to Website A or to alleged child pornography. Significantly, the affidavit (and specifically ¶ 39 and ¶ 40) is devoid of any alleged facts showing internet usage by anyone at 3030 Oliver Street in Joplin Missouri, for nine months before the search in November of 2013. Even more critical is the fact that the affidavit is devoid of any factual allegations that this internet usage had any connection to Website A or suspected child pornography at any specified time.

Additionally, the administrative subpoenas referenced in Agent Root's affidavit were generated by case agents with the FBI, and without judicial oversight, pursuant to 18 U.S.C. § 3486. These administrative subpoenas invasively sought highly personal digital information allegedly connected to internet usage of persons located at 3030 Oliver Street in Joplin, Missouri. *See Attachments C and D.* Significantly, neither administrative subpoena clearly sets forth that this investigative demand relates to any specific law enforcement purpose specifically authorized law by 18 U.S.C. § 3486. Rather, both

administrative subpoenas vaguely, and exclusively, reference that they were issued to further "an authorized law enforcement inquiry[.]" *See Attachments C and D*. Indeed, both administrative subpoenas are utterly devoid of any specific facts showing that they were issued for any legitimate law enforcement purpose or based on "reasonable cause" to investigate those located at 3030 Oliver Street in Joplin, Missouri. *Id*.

Paragraph 41 of the affidavit states:

41. On October 7, 2013, the Affiant reviewed a compact disc containing image files posted by Website A user "maddog8in" to said website. The five images depict the same female child; that appears to be approximately 13 years old. The images depict the child in various forms of undress and posing suggestively for the camera. Four of the five images have the name, "Laura" in the title. One of the images titled, "Laura_serie2_030" depicts the child lying on a couch with her arms over her head. She is naked from the waist down and a large birth mark is visible on her left hip. Her leg is crossed over herself, preventing full view of her vagina in this preview photo. The Affiant reviewed the associated comments posted to these albums. The dates of the comments were between November 2008 and August 2012. An example of the comments: are: 2008-11-03 at 09:08:24 from user ID "maddog8in," "love to trade with other dads." 2008-11-05 at 17:44:15, "woooooow!!! Your daughter's tits are great!, have you seen her pussy?"; 2011-10-18 at 13:11:40, "The vids from Laura when younger are nicer;)."

*Attachment A*.

Paragraph 41 is the most critical statement of purported fact in the affidavit. It is the sole paragraph in the affidavit that contains any allegations pertaining to alleged child pornography and any alleged connection with persons at 3030 Oliver Street in Joplin, Missouri. As with ¶ 38, ¶ 41 critically omits to inform the Magistrate as to the identities of the person(s) who provided this information, the process by which said information was gathered, any history as to the reliability or veracity of these sources, and how, or by

whom, this alleged conduct on Website A was attributed to persons at 3030 Oliver Avenue. Also, as with ¶ 38, the affidavit fails to inform the Magistrate that this digital information was forensically incomplete and compromised due to the fact that this information was "connected" to another Website A user, was incomplete via the deletion of information and images, and was tampered with by unknown persons feeding information to unknown members of foreign law enforcement.

While ¶ 41 and ¶ 38 share some of the aforementioned failings, ¶ 41 omits even more critical information. Agent Root avers in ¶ 41 that he received and reviewed "a compact disc containing image files posted by Website A user 'magdog8in' to said website." *Attachment A, ¶ 41*. This statement is misleading on two levels. First, in the discovery made available to the undersigned attorney, there is no report indicating the source of this disk. Unlike the statements contained in ¶ 38, which at least flowed from an FBI report (*Attachment B*), the statements in ¶ 41 are attributable to no source. Stated differently, there is no evidence showing the history, reliability, origin, or source of this disk. Thus, the affidavit appears to make a statement of critical fact without informing the Magistrate as to the very real lack of reliability and trustworthiness of this statement. Second, and even more significant, is the affidavit's conclusion that these images were "posted by Website A user 'maddog8in' to said website." *Attachment A, ¶ 41*. A review of this disk shows no substantiation that this statement of alleged fact is objectively verifiable. Thus, the Agent Root makes a statement of alleged fact in ¶ 41 that he himself cannot verify.

Further, in ¶ 41 Agent Root also states that said images depict a female in "various forms of undress and posing suggestively for the camera."   *Attachment A*.   In reality, only two of these images involve any lack of clothing and none of the images rise to the level of child pornography.   Root then focuses on one specific image, "Laura_series2 _030," which he describes as a female "lying on a couch with her arms over her head.   She is naked from the waist down and a large birth mark is visible on her left hip.   Her leg is crossed over herself, preventing full view of her vagina[.]"   *Attachment A, ¶ 41*.   This statement creates a false and misleading impression that this female's genitalia were partially visible.   In fact, the image shows no view of the female's genitalia.

Similarly, in ¶ 41, Agent Root lists a number of "associated comments to these albums."   *Attachment A, ¶ 41*.   This statement creates a false and misleading impression that the listed comments are in fact associated with the images referenced in ¶ 41.   Given that the images contained in the discovery are allegedly posted on Website A in albums (except for those contained on the disk referenced in ¶ 41), and the comments appear to be made to the album as a whole, there is no way to associate these specific comments with the specific five images discussed in ¶ 41.   Indeed, these comments appear to reference the three albums mentioned in ¶ 38—which according to the affidavit appear to contain adult pornography.   To the knowledge of the undersigned attorney, specific comments are not connected to specific images.   Rather, said comments are generically listed in reference to an entire album.   Any attempt to characterize the listed comments as "associated" with the five images discussed in ¶ 41, which were not posted as an album, is both inaccurate and

12

misleading.   At most, these comments appear to be associated with albums that do not contain any image alleged by the Government to be child pornography images posted on Website A.

### Controlling Legal Authority and Analysis

*(1) The Affidavit is Based on False and*
*Misleading Statements and/or Material Omissions*
*of Fact in Violation of Franks v. Delaware*

The Eighth Circuit has recently, and clearly, delineated the legal basis a movant must establish to warrant a *Franks* hearing:

> "To prevail on a *Franks* challenge, a defendant must show the following: (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *United States v. Cowling,* 648 F.3d 690, 695 (8th Cir.2011) (internal quotation marks omitted). "Allegations of negligence or innocent mistake are insufficient." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674.

*United States v. Smith*, 715 F.3d 1110, 1118 (8th Cir. 2013).   Further, "'recklessness may be inferred from the fact of omission of information from an affidavit ... only when the material omitted would have been clearly critical to the finding of probable cause.' *United States v. Ozar,* 50 F.3d 1440, 1445 (8th Cir.1995) (internal quotation marks omitted)." *United States v. Thompson*, 690 F.3d 977, 986-87 (8th Cir. 2012).   Given these standards, a *Franks* hearing is warranted in this case.   Specifically, the affidavit offered to the magistrate in this case intentionally or recklessly contained numerous misstatements and/or omission of material facts critical to the finding of probable cause as detailed below.

13

In ¶ 38 of Agent Root's affidavit, he stated under oath to the magistrate that:

38. On July 22, 2013, Website A user "maddog8in" was identified as creating albums and posting them to Website A. The e-mail address associated with user "maddog8in" was listed as "maddog8in@yahoo.com." "maddog8in" was found to have posted three albums. The first album was named, "24 yo daughter & friend" with an album description of "please leave comments trade with other dads" and advertised 12 photos inside the album. The second album was titled, "daughter in shower and friend," with an album description of "love to trade p4p with other dads" and also advertised 12 photos inside the album. The third album was titled, "Santas Elves." This album did not have an album description but advertised five photos.  It was noted that user id "maddog8in" commented 13 times on various images examples of the comments are as follows: "Love to see more of her love to trade on yahoo." Posted on 03/24/2009 at 21:28:05 UTC. "Nice set check mine out and would love to trade pass." Posted on 01/29/2010 at 13: 13 :26 UTC. "Lily what a sexy lady what part of OK are you from in MO here would love to chat some time check out my albums." Posted on 11/29/2011 at 01 :29:02 UTC. Etc.

*Attachment A.*

The above statements were made to the magistrate, under oath, despite the fact that Agent Root possessed an FBI report (*Attachment B*) that clearly showed that the source of all of this information were unknown and unverified members of "foreign law enforcement" who were, in turn, reciting information obtained by unknown and unverified persons working for Website A.   Agent Root, prior to offering the magistrate his affidavit, knew, and then intentionally or recklessly omitted, the complete lack of reliability as to the sources that supplied the statements in ¶ 38 of his affidavit.   Critically omitted from the FBI report, and the affidavit, are the identities of the persons who provided this information, the process by which said information was gathered, what if any forensic analysis was done, any history as to the reliability or veracity of these sources, and how, or

by whom, this alleged conduct on Website A was attributed to persons at 3030 Oliver Avenue in Joplin, Missouri.   Agent Root's affidavit intentionally or recklessly failed to inform the Magistrate that the source of these alleged connections of said persons to Website A was an unknown and untested source, who used an unknown forensic procedure (assuming that any forensic analysis was done at all), or that this source had absolutely no assurance of reliability, veracity, or any history of trustworthiness personally or concerning forensic methods.

The affidavit also intentionally or recklessly failed to inform the Magistrate that the forensic basis for any alleged connections between Website A and persons at 3030 Oliver in Joplin, Missouri are incomplete and have a high risk of taint, corruption, and a lack of reliability.   Paragraph 38 of the affidavit states, "On July 22, 2013, Website A user 'maddog8in' was identified as creating albums and posting them to Website A. The e-mail address associated with user 'maddog8in' was listed as maddog8in@yahoo.com. 'maddog8in' was found to have posted three albums."   *Attachment A*.   The affidavit, however, failed to inform the Magistrate that the above critical statements in ¶ 38 were, according to the FBI report (*Attachment B*), obtained from an unknown person who was allegedly connected "with a foreign investigation related to a user of Website A."   *See Attachment B, page 4*.   Stated differently, Agent Root intentionally and/or recklessly omitted from the affidavit information he had obtained from the FBI that this information in ¶ 38 was unverified and apparently unverifiable.   Agent Root's omission from the affidavit is not minor.   The risks of taint, corruption, and the existence of malware and

computer viruses are real and significant when other users are associated with, and have access to, digital information and images.   Here, the "connection" this unknown Website A user had with the alleged images referenced in the affidavit is unknown and/or unspecified.   In his affidavit, Agent Root failed to share with the Magistrate that the forensic reliability of the affidavit's conclusion that the images allegedly connected to 3030 Oliver Street have a strong possibility of corruption and compromise due to another user having a "connection" with these images.

Similarly, the affidavit failed to inform the Magistrate that the FBI has informed Agent Root that "[a]ll other images are not available as they have been either deleted by the user that posted the image or it has been taken down by Website A administrators." *Attachment B* at page 6.   In assessing the reliability of the averments made by Agent Root in his affidavit, it would have been critical to know the "pedigree" of the statements contained in ¶ 38.   By intentionally and/or recklessly omitting the lack of reliability, verification, and trustworthiness of the statements in ¶ 38, Agent Root prevented any meaningful probable cause analysis by the magistrate.   Rather, the affidavit hid from the Magistrate's consideration the fact that the digital information discussed in ¶ 38 is unverified, unverifiable, potentially incomplete, has potentially been tampered with by an unknown person or persons, and may be forensically compromised.

Paragraph 41 of the affidavit states:

41. On October 7, 2013, the Affiant reviewed a compact disc containing image files posted by Website A user "maddog8in" to said website. The five images depict the same female child; that appears to be approximately 13

16

years old. The images depict the child in various forms of undress and posing suggestively for the camera. Four of the five images have the name, "Laura" in the title. One of the images titled, "Laura_serie2_030" depicts the child lying on a couch with her arms over her head. She is naked from the waist down and a large birth mark is visible on her left hip. Her leg is crossed over herself, preventing full view of her vagina in this preview photo. The Affiant reviewed the associated comments posted to these albums. The dates of the comments were between November 2008 and August 2012. An example of the comments: are: 2008-11-03 at 09:08:24 from user ID "maddog8in," "love to trade with other dads." 2008-11-05 at 17:44:15, "woooooow!!! Your daughter's tits are great!, have you seen her pussy?"; 2011-10-18 at 13:11:40, "The vids from Laura when younger are nicer;)."

*Attachment A.*

Paragraph 41 is the most critical statement of purported fact in the affidavit. It is the sole paragraph in the affidavit that contains any allegations pertaining to alleged child pornography and any alleged connection with persons at 3030 Oliver Street in Joplin, Missouri. As with ¶ 38, ¶ 41 Agent Root intentionally or recklessly omitted to inform the Magistrate as to the identities of the person(s) who provided this information, the process by which said information was gathered, any history as to the reliability or veracity of these sources, and how, or by whom, this alleged conduct on Website A was attributed to persons at 3030 Oliver Avenue. Also, as with ¶ 38, the affidavit intentionally or recklessly failed to inform the Magistrate that this digital information was potentially forensically incomplete and compromised due to the fact that this information was "connected" to another Website A user, was incomplete via the deletion of information and images, and was tampered with by unknown persons feeding information to unknown members of foreign law enforcement.

17

While ¶ 41 and ¶ 38 share some of the aforementioned material omissions, ¶ 41 omits even more critical information. Agent Root avers in ¶ 41 that he received and reviewed "a compact disc containing image files posted by Website A user 'magdog8in' to said website." *Attachment A, ¶ 41*. This statement is intentionally or recklessly misleading on two levels. First, in the discovery made available to the undersigned attorney, there is no report indicating the source of this disk. Unlike the statements contained in ¶ 38, which at least flowed from an FBI report (*Attachment B*), the statements in ¶ 41 are attributable to no source. Stated differently, there is no evidence showing the history, reliability, origin, or source of this disk. Thus, ¶ 41 of the affidavit made a statement of critical fact without informing the Magistrate as to the very real lack of any reliability and trustworthiness of this statement.

Second, and even more significant, is the affidavit's conclusion that these images were "posted by Website A user 'maddog8in' to said website." *Attachment A, ¶ 41*. A review of this disk shows no substantiation that this statement of alleged fact is objectively verifiable. Thus, the Agent Root intentionally or recklessly made statements of alleged fact in ¶ 41 that he himself cannot verify.

Further, in ¶ 41 Agent Root also states that said images depict a female in "various forms of undress and posing suggestively for the camera." *Attachment A*. In reality, only two of these images involve any lack of clothing and none of the images rise to the level of child pornography. Root then focuses on one specific image, "Laura_series2 _030," which he describes as a female "lying on a couch with her arms over her head. She is

naked from the waist down and a large birth mark is visible on her left hip. Her leg is crossed over herself, preventing full view of her vagina[.]" *Attachment A, ¶ 41*. This statement intentionally or recklessly creates a false and misleading impression that this female's genitalia were partially visible. In fact, the image shows no view of the female's genitalia. Thus, the affidavit intentionally or recklessly misinformed the magistrate of a material fact in the probable cause determination—that images partially depicting a minor's genitalia existed and were posted to Website A by Mr. Drew.

Similarly, in ¶ 41, Agent Root lists a number of "associated comments to these albums." *Attachment A, ¶ 41*. This statement intentionally or recklessly creates a false and misleading impression that the listed comments are in fact associated with the images referenced in ¶ 41. Given that the images contained in the discovery are allegedly posted on Website A in albums (except for those contained on the disk referenced in ¶ 41), and the comments appear to be made to the album as a whole, there is no way to associate these specific comments with the specific five images discussed in ¶ 41. Indeed, these comments appear to reference the three albums mentioned in ¶ 38—which according to the affidavit appear to contain adult pornography. To the knowledge of the undersigned attorney, specific comments are not connected to specific images. Rather, said comments are generically listed in reference to an entire album. Any attempt to characterize the listed comments as "associated" with the five images discussed in ¶ 41, which were not posted as an album, is both intentionally or recklessly inaccurate and misleading. At most, these comments appear to be associated with albums that do not contain any image

19

alleged by the Government to be child pornography images posted on Website A.

For the above reasons, *Franks* requires suppression of any and all evidence or information obtained by law enforcement pursuant to the affidavit authored by Agent Root. The affidavit is replete with intentional or reckless omissions of facts as to the identity (or lack thereof) and trustworthiness of all persons or information relating to Website A. The affidavit further contains false statements of purported fact as to the existence of child pornography and/or comments alleged connected to images posted on Website A. These omissions and false statements of fact were critical to the finding of probable cause. Stated conversely, "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *United States v. Smith*, 715 F.3d 1110, 1118 (8th Cir. 2013). Accordingly, the Court should conduct a *Franks* hearing, and this motion to suppress evidence should be granted.

### (2) The Affidavit Utterly Lacks Probable Cause and is Based on Stale Information

In *United States v. O'Dell*, 766 F.3d 870 (8th Cir. 2014), the Eighth Circuit set forth the controlling standards for the issuance of a search warrant based on an affidavit:

> "The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." [*United States v.* Solomon, 432 F.3d 824, 827 (8th Cir. 2005)] (internal quotation marks omitted).

> "When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon,* 432 F.3d at 827 (internal quotation marks omitted). "The core question in assessing probable cause based upon

information supplied by an informant is whether the information is reliable." *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993). "Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *Id.* "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *United States v. Keys,* 721 F.3d 512, 518 (8th Cir.2013) (quoting *Williams,* 10 F.3d at 593).

*United States v. O'Dell*, 766 F.3d 870, 873-74 (8th Cir. 2014).

Further, there is no doubt that the determination of probable cause is location specific. The United States Supreme Court and the Eighth Circuit have both defined probable cause as an inquiry that focuses on the place to be searched. *See United States v. Stevens*, 439 F.3d 983, 987-88 (8th Cir. 2006) (citing *United States v. Terry*, 305 F.3d 818, 822 (8th Cir.2002), and *Illinois v. Gates*, 462 U.S. 213, 238 (1983), for the principle that probable cause is determined by looking at the evidence as a whole in deciding if there is a fair probability that contraband or similar evidence would be found at the targeted location); *see also United States v. Williams*, 534 F.3d 980, 984 (8th Cir. 2008), and *United States v. Durham*, 470 F.3d 727, 733 (focusing the probable cause inquiry on a particular location or asserted location).

Finally, probable cause must exist at the time the search warrant is issued and can become "fatally stale" if too much time passes between the allegedly suspicious activity and the issuance of the search warrant. *United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007); *see also United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007).

21

However, "[t]here is no bright-line test for determining when information is stale." *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir.), *cert. denied,* 516 U.S. 903, 116 S.Ct. 265, 133 L.Ed.2d 188 (1995). Further, "[t]he passage of time is not necessarily the controlling factor in determining staleness, as other factors, such as 'the nature of the criminal activity involved and the kind of property subject to the search,' must be considered." *Id.* (quoting *United States v. Rugh,* 968 F.2d 750, 754 (8th Cir.1992)).

The "four-corners" of Agent Root's affidavit supplied to the magistrate in this case falls fatally short of establishing probable cause to search the home located at 3030 S. Oliver Street in Joplin, Missouri, and its contents. In short, the affidavit utterly fails to present evidence tending to show that child pornography would be located at that location. Additionally, any information connecting Website A to internet and computer activity at the 3030 S. Oliver home is fatally stale being at least two years prior to the filing of the affidavit. Finally, the *Leon* "good faith" exception does not rescue this otherwise illegal search and seizure in that, as detailed above, the affidavit was authored and filed with bad faith in terms of the aforementioned intentional or reckless omissions or misstatements of material facts.

The only paragraphs in the affidavit that even attempt to focus the purported probable cause basis on 3030 Oliver Street in Joplin, Missouri are found in ¶¶ 38-42. Paragraph 38 states:

> 38. On July 22, 2013, Website A user "maddog8in" was identified as creating albums and posting them to Website A. The e-mail address

associated with user "maddog8in" was listed as "maddog8in@yahoo.com." "maddog8in" was found to have posted three albums. The first album was named, "24 yo daughter & friend" with an album description of "please leave comments trade with other dads" and advertised 12 photos inside the album. The second album was titled, "daughter in shower and friend," with an album description of "love to trade p4p with other dads" and also advertised 12 photos inside the album. The third album was titled, "Santas Elves." This album did not have an album description but advertised five photos.   It was noted that user id "maddog8in" commented 13 times on various images examples of the comments are as follows: "Love to see more of her love to trade on yahoo." Posted on 03/24/2009 at 21:28:05 UTC. "Nice set check mine out and would love to trade pass." Posted on 01/29/2010 at 13: 13 :26 UTC. "Lily what a sexy lady what part of OK are you from in MO here would love to chat some time check out my albums." Posted on 11/29/2011 at 01 :29:02 UTC. Etc.

*Attachment A.*

First and foremost, this paragraph provides no basis for suspecting any form of child pornography will be located at 3030 Oliver Street—indeed, the titles of the folders tend to support an assumption that they contained exclusively adult pornography.

Second, ¶ 38 is the only statement in the affidavit that purports to allege <u>when</u> any suspicious conduct relevant to the above-titled case, and connected to Website A, occurred. To be clear, nothing in the entire affidavit alleges <u>when</u> any occupant of 3030 Oliver Street is alleged to have posted images on Website A appearing to be child pornography—on that fact the affidavit is completely silent.   *See Attachment A, ¶¶ 32-42.*   Indeed, ¶ 38 makes clear that the last suspicious actions of any kind allegedly connecting 3030 Oliver Avenue to Website A occurred on November 29, 2011—two years prior to the search and seizure conducted by Agent Root in this case.   Importantly, this last known activity is wholly unconnected with any allegations of posting, or commenting on, child pornography.

Rather, this conduct was merely posting on Website A the comment "Lily what a sexy lady what part of OK are you from in MO here would love to chat some time check out my albums." Posting such a comment is neither a crime, evidence of a crime, nor directly attributable to anyone at 3030 Oliver Street. As previously stated, the entire affidavit is devoid of any allegation of purported fact showing <u>when</u> anyone at 3030 Oliver Street allegedly posted, accessed, or was otherwise associated with any images of suspected child pornography. *See Attachment A, ¶¶ 32-42.*

Paragraphs 39 and 40 state:

39. On February 12, 2013, an administrative subpoena was sent to Yahoo! regarding e-mail address, "maddog8in@yahoo.com" requesting subscriber information for this user. On February 27, 2013, Yahoo! provided the following subscriber information: Name: Mr Mad Dog, login Name: "maddog8in@grouply.com;" Alternate E-mail: "maddog8in@grouply.com." Account Created: IP address 69.55.132.66 on June 11, 2006at11:51:59 GMT. Account status: Active. Last login IP: 24.119.190.79 on February 26, 2013 at 01:45:12 GMT.

40. On March 19, 2013 an administrative subpoena was served on Cable One Inc. requesting subscriber information for IP address 24.119.190.79 from January 14, 2013 at 12:02:13 GMT to February 26, 2013 at 01:45:12 GMT. On March 25, 2013, Cable One Inc. provided the following subscriber information for the above listed IP address. Account holder: Mark Drew, Address: 3030 S. Oliver Ave., Joplin, MO 64804 with phone number 417-623-6861.

*Attachment A.* Paragraphs 39 and 40 make clear that the last internet activity of <u>any kind</u> allegedly associated with 3030 Oliver Street in Joplin, Missouri was on February 26, 2013, almost nine months before the execution of the federal search warrant in this case. There is absolutely no indication in the affidavit that the alleged internet activity on February 26,

24

2013, was linked to Mr. Drew or had any connection to Website A or to alleged child pornography.   Significantly, the affidavit (and specifically ¶¶ 39 and 40) is devoid of any alleged facts showing internet usage by anyone at 3030 Oliver Street in Joplin Missouri, for nine months before the search in November of 2013.   Even more critical is the fact that the affidavit is devoid of any factual allegations that this internet usage had any connection to Website A or suspected child pornography at any specified time.

Paragraph 41 of the affidavit states:

41. On October 7, 2013, the Affiant reviewed a compact disc containing image files posted by Website A user "maddog8in" to said website. The five images depict the same female child; that appears to be approximately 13 years old. The images depict the child in various forms of undress and posing suggestively for the camera. Four of the five images have the name, "Laura" in the title. One of the images titled, "Laura_serie2_030" depicts the child lying on a couch with her arms over her head. She is naked from the waist down and a large birth mark is visible on her left hip. Her leg is crossed over herself, preventing full view of her vagina in this preview photo. The Affiant reviewed the associated comments posted to these albums. The dates of the comments were between November 2008 and August 2012. An example of the comments are: 2008-11-03 at 09:08:24 from user ID "maddog8in," "love to trade with other dads." 2008-11-05 at 17:44:15, "wooooooow!!! Your daughter's tits are great!, have you seen her pussy?"; 2011-10-18 at 13:11:40, "The vids from Laura when younger are nicer;)."

*Attachment A.*

Paragraph 41 is the sole paragraph in the affidavit that contains any allegations pertaining to alleged child pornography and any alleged connection with persons at 3030 Oliver Street in Joplin, Missouri.   In ¶ 41, Agent Root states that said images depict a female in "various forms of undress and posing suggestively for the camera."   *Attachment A.*   In reality, only two of these images involve any lack of clothing and none of the images

rise to the level of child pornography.   Root then focuses on one specific image, "Laura_series2 _030," which he describes as a female "lying on a couch with her arms over her head.   She is naked from the waist down and a large birth mark is visible on her left hip.   Her leg is crossed over herself, preventing full view of her vagina[.]"   *Attachment A, ¶ 41.*   In fact, the image shows no view of the female's genitalia.

Paragraph 42 connects Mark Drew to the residence at 3030 S. Oliver, but states nothing about internet/computer activities or Website A.

Given the controlling legal authority in the Eighth Circuit, suppression is warranted. In *United States v. O'Dell*, 766 F.3d 870 (8th Cir. 2014), the Eighth Circuit stated the probable cause is based on the "totality of the circumstances" presented in the "four corners of the affidavit" and focuses the inquiry on a "particular place."   *Id.* at 873-74.   A review of the facts and arguments reveal that the affidavit utterly fails to establish probable cause:   (1) as to the existence of any child pornography anywhere; and (2) that any illegal activities were connected with 3030 S. Oliver Street in Joplin, Missouri.

Even more critically, "'[t]he core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.'"   *Id.* (citing *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993).   *O'Dell* states further, "[i]nformation may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence."   *Id.*   Finally, *O'Dell* states that "'[i]f information from an informant is shown to be reliable because of independent corroboration, then it is a

permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.' *United States v. Keys,* 721 F.3d 512, 518 (8th Cir.2013) (quoting *Williams,* 10 F.3d at 593)." *O'Dell*, 766 F.3d at 873-74.

In this case, all of the material information presented in the affidavit purporting to show probable cause came from what can only be described as an "informant." Specifically, the purported facts stated in ¶¶ 38-41 of Agent Root's affidavit came exclusively from unidentified persons in the form of foreign law enforcement officers and at least one unknown Website A user who allegedly supplied information to this foreign law enforcement entity. These persons are the functional equivalent of an informant. Significantly, Agent Root's affidavit does not provide a single fact or representation that would tend to prove the trustworthiness, reliability, veracity, or past accuracy of these foreign law enforcement officers or the Website A user(s) from whom these officers obtained information. Given the complete lack of any reason to trust these foreign sources as to the only facts purporting to establish probable cause, there is no probable cause to support the search of 3030 S. Oliver.

Further, the information contained in the affidavit is fatally stale. *See United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007). The last known internet activity attributable to the persons at 3030 S. Oliver of any kind occurred nine months prior to Agent Root's affidavit. The last know activity of any kind allegedly connecting the "maddog8in" email address to Website A (and said activity had nothing to do with posting,

27

or commenting on, an image of child pornography) was two years before Agent Root authored his affidavit. Simply put, even assuming that there was some connection between 3030 S. Oliver and child pornography on Website A, said connection occurred two years before the affidavit. Given these timelines, any probable cause basis contained in the affidavit was fatally stale.

Additionally, the *Leon* "good faith" exception to the warrant requirement should not save this illegal search and seizure. In *United States v. Cannon*, 703 F.3d 407 (8th Cir. 2013), the Eighth Circuit stated that the *Leon* "good faith" exception is not appropriate "when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge" or "when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*." *Id*. at 412 (quoting *United States v. Fiorito,* 640 F.3d 338, 345 (8th Cir.2011) (quoting *Perry,* 531 F.3d at 665 (8th Cir.2008)), *cert. denied,* 565 U.S. ——, 132 S.Ct. 1713, 182 L.Ed.2d 254 (2012)). As detailed above, the affidavit contained critical omissions and/or misstatements of fact intentionally or recklessly made by Agent Root. Further, this affidavit is so wholly devoid of any basis for finding probable cause to authorize this search of 3030 S. Oliver that the affidavit could not be reasonably relied upon by the officers executing the warrant.

For all of the above reasons, this Court should hold that the affidavit failed to establish probable cause, violated the Fourth Amendment, and is not covered by the *Leon*

"good faith" exception.   For that reason, Mr. Drew's motion to suppress should be granted.

<em>(3) The Affidavit is Based on<br>Illegal Administrative Subpoenas</em>

Paragraphs 39 and 40 of Agent Root's affidavit detail two administrative subpoenas (*Attachments C and* D) that were obtained by law enforcement in the investigation of Mr. Drew.   Specifically, ¶ 39 and ¶ 40 state:

> 39. On February 12, 2013, an administrative subpoena was sent to Yahoo! regarding e-mail address, "maddog8in@yahoo.com" requesting subscriber information for this user. On February 27, 2013, Yahoo! provided the following subscriber information: Name: Mr Mad Dog, login Name: "maddog8in@grouply.com;" Alternate E-mail: "maddog8in@grouply.com."   Account Created: IP address 69.55.132.66 on June 11, 2006at11:51:59 GMT. Account status: Active. Last login IP: 24.119.190.79 on February 26, 2013 at 01:45:12 GMT.

> 40. On March 19, 2013 an administrative subpoena was served on Cable One Inc. requesting subscriber information for IP address 24.119.190.79 from January 14, 2013 at 12:02:13 GMT to February 26, 2013 at 01:45:12 GMT. On March 25, 2013, Cable One Inc. provided the following subscriber information for the above listed IP address. Account holder: Mark Drew, Address: 3030 S. Oliver Ave., Joplin, MO 64804 with phone number 417-623-6861.

*Attachment A.*   These two paragraphs are critical to the affidavit in that they are the only connection between 3030 S. Oliver Avenue and the remainder of the affidavit.

The administrative subpoena that was sent to Yahoo commanded the disclosure of the following personal information:

> the following information for the period 2012-11-01 to present or the billing cycle including the requested time period:   customer or subscribed name, customer or subscriber address, local and long distance connection records,

records of session times and duration, length of service (including start date), types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address (including IP address), and means and source of payment for service (including any credit card or bank account number) which may be relevant to an authorized law enforcement inquiry involving the following: maddog8in@yahoo.com.

*Attachment D.*   The administrative subpoena that was sent to Cable One commanded the disclosure of the following personal information:

customer or subscriber name, customer or subscriber address, length of service (including start date), types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address (including IP address), and means and source of payment for service (including any credit card or bank account number) which may be relevant to an authorized law enforcement inquiry, involving the following:   24.119.l90.79 from January 14, 2013 at 12:02:13 GMT to February 26, 2013 at 01:45:12 GMT.

*Attachment C.*   Thus, these administrative subpoenas sought highly personal information relating to the computer and internet usage of Mr. Drew alleged by the government.

These administrative subpoenas were created pursuant to 18 U.S.C. § 3486 which authorizes the Attorney General to unilaterally, and without judicial oversight, create subpoenas for records or testimony in cases involving "a Federal offense involving the sexual exploitation or abuse of children[.]"   18 U.S.C. § 3486(a)(1)(A)(i)(II).

The Eighth Circuit has recently addressed some of the Fourth Amendment implications of administrative subpoenas authorized by § 3486.   *See United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813 (8th Cir. 2012). Specifically, the Eighth Circuit held that:

An administrative subpoena, unlike a warrant, does not need to be supported by probable cause and is analyzed under the Fourth Amendment's general reasonableness standard. *Doe v. United States,* 253 F.3d 256, 264–65 (6th Cir.2001); *United States v. Bailey (In re Subpoena Duces Tecum),* 228 F.3d 341, 347–50 (4th Cir.2000). "The showing of reasonable cause required to support an application for enforcement of a subpoena duces tecum 'is satisfied ... by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry.' " *Donovan v. Shaw,* 668 F.2d 985, 989 (8th Cir.1982) (quoting *Oklahoma Press Publ'g Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946)).

*Whispering Oaks*, 673 F.3d at 817.

Initially, it is highly significant that the Eighth Circuit reaffirmed "the Fourth Amendment's general reasonableness standard." *Id.* The United States Supreme Court has stated that the "ultimate touchstone" of the Fourth Amendment is reasonableness. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). Given the flexibility of the concept of "reasonableness" the Supreme Court has recognized that the necessary showing of probable cause when seeking a warrant is a flexible concept that varies depending on the degree of intrusion upon a citizen's expectation of privacy. "The showing of probable cause necessary to secure a warrant may vary with the object and the intrusiveness of the search, but the necessity for the warrant persists." *Michigan v. Tyler*, 436 U.S. 499, 506 (1978); *see also United States v. Ladson*, 774 F.2d 436, 440 (11th Cir. 1985) (quoting *Michigan v. Tyler*); *United States v. One Parcel of Real Property Known as 2401 South Claremont*, 724 F.Supp. 668, 669 (W.D. Mo. 1989). While *Whispering Oaks* states that administrative subpoenas do not require probable cause, the searches and seizures accomplished by the subpoenas must ultimately be reasonable. *Michigan v.* Tyler teaches

31

that reasonableness is a sliding scale that must take into account the nature of the area or object searched and the level of intrusiveness.

The Eighth Circuit's analysis in *Whispering Oaks* does not address the level of intrusiveness caused by an administrative subpoena in evaluating the reasonableness of a search and seizure caused by such a subpoena.   Even more significantly, the decision in *Whispering Oaks* predates the United States Supreme Court's 2014 decision in *Riley v. California*, 134 S.Ct. 2473 (2014), which revolutionized legal precedent as to the privacy expectations that are attached to electronic, internet, and digitized evidence and records.

In *Riley*, the Supreme Court went to great lengths to illustrate the profound privacy interests that attach to modern day smart phones which Justice Roberts described as "minicomputers."   134 S.Ct. at 2488-491.   Significantly, the Supreme Court concluded that the privacy expectations attached to cell phones exceeds the privacy expectations attached to private homes:

> In 1926, Learned Hand observed (in an opinion later quoted in *Chimel* ) that it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." *United States v. Kirschenblatt,* 16 F.2d 202, 203 (C.A.2). If his pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Riley v. California*, 134 S.Ct. 2473, 2490-491 (2014).   Although Mr. Drew's case does not involve a cell phone, *Riley* represents a new realm of Fourth Amendment analysis—the

digital realm. Justice Roberts wrote that in the "digital age" Fourth Amendment analysis is no longer limited to the "physical realities" of objects searched. *Id.* at 2489. Rather, Justice Roberts pointed at that in the digital age:

> The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

*Id.* Many of these same privacy concerns exist as to the type of information sought by the administrative subpoenas in Mr. Drew's case. For example, Justice Roberts deemed "internet search and browsing history" as an area of heightened privacy expectations. *Id.* at 2490. These administrative subpoenas probed deeply into the digital realm of Mr. Drew's alleged personal digital and internet information and activity.

It is clear that at no time during the formation or execution of these administrative subpoenas has anyone given any consideration to the "object and the intrusiveness of the search" as required by *Michigan v. Tyler*, 436 U.S. 499, 506 (1978). *Riley* makes clear that electronic and/or digitized evidence (such as that found on smart phones) can carry an expectation of privacy greater than that attached to a citizen's personal residence. 134 S.Ct. at 2490-491. The administrative subpoenas used by the FBI in their investigation of

Mr. Drew were a substantial and probing intrusion into profound privacy interests in digital information. Specifically, these subpoenas laid open some of the same kinds of electronic/digital information that *Riley* characterized as a greater privacy interest than a personal residence such as:

- "local and long distance connection records"

- "records of session times and duration"

- "types of service utilized"

- "customer or subscriber name"

- "customer or subscriber address"

- "means and source of payment for service (including any credit card or bank account number)"

*Attachments C and D*.

The undersigned counsel is aware that under current Eighth Circuit authority administrative subpoenas do not require probable cause. Current Eighth Circuit law does, however, require reasonableness as to administrative subpoenas. The searches and seizures accomplished via the vehicle of administrative subpoenas in Mr. Drew's case were unreasonable under the Fourth Amendment. Simply put, these administrative subpoenas caused a serious intrusion into the kinds of privacy interests brought to light by the Supreme Court in *Riley*. Given the "sliding scale" of reasonableness used to assess the Fourth Amendment implications of governmental actions, these highly invasive administrative subpoenas were unreasonable and unconstitutional. Therefore, any

34

information obtained directly or indirectly via these administrative subpoenas should be suppressed.

WHEREFORE, Defendant, Mark E. Drew, by and through counsel, moves for the suppression of any and all evidence and/or statements arising on, or after, the November 21, 2013, search and seizure of items by law enforcement of the home of Mr. Drew located at 3030 S. Oliver Street in Joplin, Missouri. Additionally, Mr. Drew requests a *Franks* hearing. Specifically, this motion seeks the suppression of any evidence or statements derived directly, or indirectly, from the following items seized and searched by members of law enforcement from pursuant to this search warrant on, or after, November 21, 2013:

- An EMachine desktop computer, Model W5333, Serial Number CGM7630008155.

- A Gateway desktop computer, Model 510X, Serial Number 1099965470.

- An EMachine desktop computer, Model D4362, Serial Number GV24410000881.

- A Sandisk 4 GB Cruzer USB flash drive.

- Various CD or DVD disks seized from the home of Mark Drew.

- All statements allegedly made by Mark Drew on November 21, 2013, or thereafter.

Respectfully submitted,

*/s/ David R. Mercer*
**DAVID R. MERCER, #36572**
First Assistant Federal Public Defender
901 St. Louis Street, suite 801
Springfield, Missouri 65806
(417) 873-9022
Attorney for Defendant

January 15, 2015

35

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of January, 2015, the foregoing document was electronically filed with the Clerk of the Court, and a copy was served on Mr. James Kelleher, Assistant United States Attorney, 901 St. Louis, Ste. 500, Springfield, Missouri 65806.

*/s/ David R. Mercer*
**DAVID R. MERCER**
